# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MIDFIRST BANK** | * | CIVIL ACTION |
| | * | |
| **versus** | * | No. 16-3941 |
| | * | |
| **KRISTIAN CRAIGE, ET AL.** | * | SECTION "L" (5) |

## ORDER & REASONS

Before the Court is *pro se* Third-Party Plaintiff Kristian Craige's ("Craige") Motion to Re-Urge a Non-Prescribed Claim, R. 26. In response, Third Party Defendants Citimortgage, Inc., Citibank, N.A., and Citigroup Inc. (the "Citi Entities") have filed a Motion to Dismiss. R. 29. Craige opposes the Motion to Dismiss. R. 34. Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

I.    BACKGROUND

This tort case involves a dispute arising out of a promissory note executed by Kristian Craige, dated June 16, 2003, regarding an Act of Mortgage executed on the same date. R. 1-1 at 1. The note was executed in favor of New Freedom Mortgage Corporation in the principal amount $73,369.00 and stipulating 6% interest per annum on the unpaid balance. R. 1-1 at 1. While the viability of the transfers is disputed, the record indicates that New Freedom Mortgage endorsed the mortgage note to Citimortgage, Inc., and Citimortgage, Inc. in turn endorsed the note to Midfirst Bank. R. 1-1 at 2. On December 17, 2014, Midfirst Bank instituted foreclosure proceedings in state court to collect on the unpaid principal on the note, $65,795.39. R. 1-1 at 3.

According to the Petition filed in state Court, Craige had not made his scheduled mortgage payments since May 1, 2014. R. 1-1 at 4.[1]

On March 15, 2016, Craige filed a *pro se* counterclaim in state court against Midfirst Bank ("Midfirst"), Citimortgage, Inc., Citibank N.A., and Citigroup Inc ("the Citi Entities"). Craige argues the Defendants conspired to commit fraud against his, and deprive him of his property. The counterclaim alleges numerous procedural errors committed by Midfirst during the foreclosure process, and also claims that the assignment of the note "has yet to be verified." R. 1-2 at 3.

On July 26, 2016, the Court held that Plaintiff's tort claims were prescribed, but granted leave for Plaintiff to amend his complaint and re-assert any non-prescribed claims. R. 19. On August 24, 2016, Plaintiff filed a motion to "re-urge any non-prescribed claims," but did not specify any of the new claims he wished to assert against Defendants. R. 21. The Court denied the Motion and explained that Plaintiff was barred from re-urging the claims in the initial Complaint, as the Court already determined those claims had prescribed. R. 23. The Court granted Plaintiff a third opportunity to file another Complaint alleging a non-prescribed claim, if such a claim exists. R. 23.

In response, Plaintiff filed a motion to re-urge a Complaint with non-prescribed claims against any of the parties. R. 26. Plaintiff appears to assert four additional claims, which he contends are not prescribed. First, Plaintiff brings a breach of contract claim against the Citi

---

[1] After MidFirst instituted foreclosure proceedings, Plaintiff filed an emergency motion to vacate the Writ of Seizure. MidFirst voluntarily postponed the Sheriff sale set for March 26, 2015. On June 25, 2015, MidFirst purchased the property at a sheriff's sale. Craige again filed a Motion to set aside the sale, arguing he received insufficient notice of the pending sheriff's sale. The Court agreed and granted the Motion. A third sheriff's sale was scheduled for July 22, 2015, and Plaintiffs received adequate notice of the sale. MidFirst purchased the property on July 22, 2015, and was issued a Writ of Possession. Subsequently, Craige filed a Petition in state court, alleging the Defendants conspired to defraud him of his property. *See* R. Doc. 1-1 for state court records.

Entities. R. 26 at 3. He makes two arguments in relation to the breach of contract claim. First, he explains that the note and mortgage were bifurcated because the "promise to pay" was placed in a trust with the SEC and later sold for profit. R. 26 at 3. Plaintiff contends that he did not consent to this process, and argues that once the note, mortgage and deed are bifurcated, the property can only be foreclosed if the holder of the deed trust is the agent of the note holder. R. 26 at 3. His second argument in support of the breach of contract claim is that he entered into a consumer credit loan, which was subsequently endorsed to the New Freedom Mortgage Corporation, which endorsed to note to MidFirst Bank. R. 26 at 3. Plaintiff avers that he did not consent to this transfer, the transfer was a breach of the mortgage contract, and therefore he is entitled to the proceeds of the trust that was created to effectuate the transfer. R. 26 at 3.

Second, Plaintiff asserts claims for violations of the Uniform Commercial Code §3-305 and Recoupment. R. 26 at 3-4. Plaintiff avers that under §3-305 there can be no holder in due course, because such a transfer would be impossible under the law. R. 26 at 4. Further, he alleges that a disclaimer required under 16 CFR 433.2 was "intentionally omitted" from the initial credit application. R. 26 at 4-5.

Third, Plaintiff argues that the Citi Entities violated Generally Accepted Accounting Principles. R. 26 at 4-5. Plaintiff contends that the banks converted the original executed note to cash, deposited it in their bank, then loaned the value to Plaintiff as if the loan came from the bank. R. 26 at 4-5. According to Plaintiff, if defendants had followed GAAP at the time of the transaction, the accounting records would show the "promise to pay" was used to generate credit to Plaintiff. R. 26 at 4-5.

Finally, Plaintiff alleges that he is entitled to quiet title to the property, because of the Citi Entities fraudulent conduct, and that he has adverse possession rights. R. 26 at 5-6. Further, he

3

requests that the Citi Entities counsel and/or the mortgage servicer be named as a defendant. R. 26 at 6. In connection to these claims, Plaintiff seeks $4,000,000.00 in damages. R. 26 at 6.

## II. PRESENT MOTIONS

### A. MidFirst's Motion to Dismiss (R. 29-1)

The Citi Entities have filed a motion to dismiss Craige's claims under Federal Rule of Civil Procedure 12(b)(6). R. 29-1 at 1-2. First, the Citi Entities argue that Craige has not alleged any facts to support his breach of contract claim, but instead relies on wholly conclusory statements. R. 29-1 at 5. In particular, they contend he has not stated facts which demonstrate the Citi Entities breach an obligation, or that he suffered damages as a result of any alleged breach. R. 29-1 at 5. Second, The Citi Entities also aver that Plaintiff's claim based on UCC 3-305 is not based in law; Plaintiff alleges that the Citi Entities cannot be a holder in due course under this provision of the UCC. R. 29-1 at 6. According to the Citi Entities this is in direct contradiction to Louisiana law, which "specifically sets forth the means by which the holder of an instrument may become a holder in due course." R. 29-1 at 6. Similarly, the Citi Entities argue that Plaintiff claims under the Federal Trade Commission Act (FTCA) fail, as the FTCA does not provide a private right of action to individual plaintiffs. R. 29-1 at 6 (citing *Fulton v. Hecht*, 580 F.2d 1243, 1248 (5th Cir. 1978)).

Third, in response to Plaintiff's claim that the Citi Entities violated Generally Accepted Accounting Principles (GAAP), the Citi Entities respond that GAAP are a set of principles, which do not provide a cause of action; and even if they did, Plaintiff only makes conclusory allegation to support this supposed claim. R. 29-1 at 6-7. Finally, the Citi Entities argue that Plaintiff's claim for quiet title must be dismissed. R. 29-1 at 8. Plaintiff avers that he is entitled to quiet title to the property because of the fraud committed by the Citi Entities; however, the

Citi Entities argue that Plaintiff's claims based on fraud have already been dismissed with prejudice. R. 29-1 at 8. Thus, the Citi Entities contend that Plaintiff's new claims should also be dismissed with prejudice. Further, they argue that because he has already had ample opportunities to amend his complaint, he should not be allowed any additional opportunities to bring claims against the Citi Entities in this proceeding. R. 29-1 at 8.

### B. Plaintiff's Response (R. 34)

In response, Plaintiff asserts that he is a Native American Choctaw, and entitled to equal protection rights under the United Nations Declaration of the Right of Indigenous Peoples. R. 34 at 1. He alleges that these rights were infringed when the Citi Entities illegally sold his home at a Sheriff's sale without proof of their status as a holder in due course. R. 34 at 2. He argues that MidFirst Bank violated his right to Due Process, as well as his First, Fourth, and Fifth Amendment Rights. R. 34 at 2. Plaintiff alleges that there is no record of the property being transferred to the Citi Entities with the Orleans Parish Clerk's Office; therefore they have no right to the property. R. 34 at 3.

### C. Citi Entities' Reply (R. 37)

Defendants review the history of this litigation, specifically that the Court has twice instructed Mr. Craige to assert a claim other than fraud, as the claims based in fraud have prescribed and were dismissed with prejudice. R. 37 at 1-2. According to the Citi Entities, Craige's response yet again raises fraud claims, despite the fact that those claims have been denied in both state and federal court.[2] Furthermore, Defendants argue that Plaintiff's new

---

[2] According to the Citi Entities, the Orleans Parish Civil District Court found there was "no break in the chain of title, and Mr. Craige was not a victim of fraud[, and] [t]he mortgage he signed with the original mortgagor property assigned its interest to CitiMortgage, and CitiMortgage to Midfirst." Written Reasons for Judgment, *Midfirst Bank v. Kristian Craige, Sr. et al.*, No. 2014-11890, Div. I-14, (C.D.C. La. Dec. 9, 2015) (R. 1-1, pp. 105-06).

5

constitutional claims are unsupported by law and fact and must be dismissed. R. 37 at 3. As an initial matter, Defendants argue that the First, Fourth, and Fifth Amendments only apply to government actors, and the Citi Entities are not government actors. R. 37 at 3. Further, they contend that Plaintiff has not pled facts to support these claims, but only makes conclusory allegations that these rights have been violated. R. 37 at 3. Because Plaintiff has not pled sufficient facts to support any of his alleged claims, the Citi Entities aver that his claims should be dismissed.

### III.  LAW AND ANALYSIS

Plaintiff Craige seeks leave of Court to file an amended complaint, in order to urge non-prescribed claims against the Citi Entities. R. 26. In response, the Citi Entities seek to dismiss this amended complaint, arguing Craige has failed to plead sufficient facts to support any of his purported claims. The Court will review the merits of the motion and the applicable law before examining the Citi Entities' asserted grounds for dismissal.

#### A.  Applicable Law

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corporation et al. v.*

6

*William Twombly*, 550 U.S. 544, 545 (2007)). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

Federal courts have historically held pro se petitioners to less stringent standards than those required of petitioners represented by counsel. *See Ominski v. Northrup Grumman Shipbuilding, Inc.,* 466 F. App'x 341, 345 (5th Cir. 2012) (affording the plaintiff "the leeway to which she is entitled as a pro se petitioner"); *see also, e.g., Haines v. Kerner,* 404 U.S. 519 (1972) (holding the allegations of a pro se complaint to "less stringent standards than formal pleadings drafted by lawyers"). The United States Court of Appeals for the Fifth Circuit, in particular, has developed a presumption against dismissing a pro se action before a plaintiff is provided a chance to amend its petition. *See Dark v. Potter,* 293 Fed. Appx. 254, 257 (5th Cir. 2008) (explaining the Fifth Circuit's "rule that Rule 12(b)(6) dismissals of pro se complaints without opportunity to amend generally constitute error"); *see also Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998); *Pena v. United States,* 157 F.3d 984, 987 (5th Cir.1998). To put this motion in perspective, this is Plaintiff Craige's third attempt to file a valid non-prescribed claim against the Citi Entities.

**B.    Discussion**

Craige's complaint appears to assert four separate claims. The Court will address each in turn. First, Craige states that he has a breach of contract claim, because he did not consent to the transfer of the note to the Citi Entities, and therefore the transfer was fraudulent.[3] R. 26 at 3. He

---

[3]    The Court finds it unnecessary to discuss whether the transfer was fraudulent because Craige did not consent to the mortgage assignment. This issue has already been addressed in state court, where the court

7

does not state any other grounds for his breach of contract claim. Thus, Craige—yet again—seeks to pursue a fraud claim against the Citi Entities. As this Court has previously explained, the prescriptive period for a fraud claim under Louisiana law is one year from the date plaintiff knew or reasonably should have known of a defendant's fraudulent act. *See Delpit v. Ansell,* No. 97–1112, 2004 WL 551206, at *2 (E.D. La. Mar. 16, 2004) (quotations and citations omitted). Craige's cause of action accrued as to the Citi Entities at the latest on February 17, 2014, when Craige asserted a claim of fraud against Midfirst. R. 1-1 at 27. However, Craige did not file the counterclaim in this case against the Citi Entities unitl March 30, 2016, more than a year after he was on notice of the potential fraud. Therefore, Craige's breach of contract claim based on the alleged fraudulent transaction is prescribed as to the Citi Entities.

Second, Craige alleges that the mortgage transfer violated provisions of the U.C.C. and federal law. R. 26 at 3-4. Craige claims that the transfer violated the terms of U.C.C. §3-305, and therefore it is impossible for the CitiEntities to be holders in due course. U.C.C. §3-305 provides that the right to enforce an obligation to pay a negotiable instrument is subject to a defense that the transaction was illegal or fraudulent. § 3-305 (Defenses and Claims in Recoupment; Claims in Consumer Transactions). Thus, it appears that Craige is arguing he is not required to pay the note because it was fraudulently transferred. Not only is this claim prescribed, but Craige only

---

determined the mortgage was validly assigned to another lender. See R. 1-1 at 106, Dec. 9, 2015, Written Reasons for Judgment ("The Court rejected Mr. Craige's argument when it found that there was no break in the chain of title, and that **Mr. Craige was not a victim of fraud.**") (emphasis added). Further, mortgage assignments assignments are standard practice in the mortgage industry. *See, e.g*, Alan M. White, *Losing the Paper - Mortgage Assignments, Note Transfers and Consumer Protection*, 24 LOY. CONSUMER L. REV. 468, 471 (2012) ("Most mortgage loans made between 1990 and 2007 were sold on the secondary market, and then ultimately resold to securities investors through a process known as securitization. As a result, the bank or mortgage company to whom the homeowner originally promised to make payments had to assign its rights in the Note, which is the contract promising payment, and the Mortgage, which is the conveyance of an interest in real estate as security for the loan.").

makes conclusory allegations to support this claim, rather than alleging facts to support his position.

Further, Craige states that the Code of Federal Regulations, Chapter 16, Section 433.2 was violated because his credit application did not include the required disclaimer. *See* 16 C.F.R. § 433.2. However, the record demonstrates that Craige initially filed his credit application with New Freedom Mortgage Corporation, not the Citi Entities. Thus, even if this disclaimer had been omitted on the initial application, it would have been because of New Freedoms' actions—not the Citi Entities. Furthermore, Section 433.2 is part of the FTC Holder Rule,[4] which does not provide a private cause of action. *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016) (citing *Fulton v. Hecht,* 580 F.2d 1243, 1248 n.2 (5th Cir. 1978)).[5] Thus, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted under either the Uniform Commercial Code or Chapter 16 of the Code of Federal Regulations.

Third, Plaintiff contends that the mortgage transfer violates Generally Accepted Accounting Principles. R. 26 at 4-5. However, the Court was unable to find any case law to support this cause of action. Further, Craige only makes conclusory statements in support of this claim, and does not offer specific facts to support his allegations.

Fourth, Craige argues that he has a claim for quiet title against Defendants, as well as adverse possession rights because he was the victim of fraud. R. 26 at 5-6. Again, the Court

---

[4] "The FTC Holder Rule was adopted pursuant to § 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which outlaws unfair and deceptive acts and practices in or affecting commerce. *See* 16 C.F.R. § 433.2 (indicating that failure to include the requisite notice is a deceptive and unfair practice under § 5 of the FTCA). Courts have uniformly held that a private right of action does not exist under § 5 of the FTCA." *Morales v. Walker Motors Sales, Inc.*, 162 F. Supp. 2d 786, 790 (S.D. Ohio 2000) (citing cases).

[5] S*ee also Bartels v. Alabama Commercial Coll., Inc.*, 918 F. Supp. 1565, 1570 (S.D. Ga. 1995), *aff'd in part, rev'd in part sub nom. Bartels v. Alabama Commercial Coll.*, 189 F.3d 483 (11th Cir. 1999) (rev. on other grounds)

notes that Craige's fraud claims have prescribed, and have been dismissed with prejudice. Further, he does not allege facts to support his supposed right to quiet title or adverse possession rights. Such conclusory allegations are insufficient to defeat a motion to dismiss. Thus, the Court finds that Craige has not alleged facts sufficient to state a plausible claim for relief. *See Ashcroft*, 556 U.S. at 678; *In re Katrina.*, 495 F.3d at 205.

Finally, Craige requests that the Court name the mortgage servicer and/or Defendants' attorneys as "nominal defendants" in this action. R. 26 at 6. Plaintiff has not stated a claim against these individuals and entities, nor has he pled the necessary facts to support any potential allegations. It would be improper for the Court to name these individuals or entities as parties.

While the Court recognizes the less stringent standard afforded to *pro se* plaintiffs, Craige's third proposed complaint falls short of Rule 12's pleading requirements. *See Ominski v. Northrup Grumman Shipbuilding, Inc.,* 466 F. App'x 341, 345 (5th Cir. 2012). The Court has provided Mr. Craige three opportunities to state viable claims against the Citi Entities. Despite this fact, Mr. Craige continues to allege fraud claims against the Defendants, and does not provide facts to support these allegations. His most recent complaint makes "conclusory allegations, unwarranted factual inferences, [and] legal conclusions." *See Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005). Such statements are an insufficient basis to pursue claims against the Defendants. *Id*. As such, the Court finds that dismissal is appropriate. *Twombly*, 550 U.S. at 570.

---

("Furthermore, there is no private cause of action under the FTC Holder Rule. . . . enforcement of the rule is the sole province of the Federal Trade Commission.") (internal citations omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff Craige's proposed complaint, R. 26, fails to state a plausible claim for relief against the Citi Entities. Therefore,

**IT IS ORDERED** that Defendant's Motion to Dismiss, R. 29, is **GRANTED. P**laintiff Craige's claims against Citimortgage, Inc., Citibank, N.A., and Citigroup Inc. are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to re-urge a complaint, R. 26, is **DISMISSED AS MOOT**.

New Orleans, Louisiana, this 26th day of May, 2016.

_____
UNITED STATES DISTRICT JUDGE

Cc:
Kristian R. Craige, Sr.
6306 Vanderbilt Avenue
Dallas, TX 75214
214-909-0588
PRO SE